# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1082

_____

| | | |
|---|---|---|
| School Board of Independent School District No. 11, Anoka-Hennepin, Minnesota, | * * * * | |
| Appellee, | * * | Appeal from the United States District Court for the |
| v. | * * | District of Minnesota. |
| Joshua Renollett, a minor, by and through his parents and legal guardians, Daniel and Patti Renollett, | * * * * * | |
| Appellant. | * | |

_____

Submitted: November 16, 2005
Filed: March 16, 2006

_____

Before WOLLMAN, FAGG, and MELLOY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

This case raises the question whether Joshua Renollett,[1] a disabled student, received a free appropriate public education (FAPE) within the meaning of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400-1487. Josh

_____

[1]Consistent with usage in the appellant's brief, we will refer to Joshua as Josh throughout the remainder of this opinion.

appeals from the district court's[2] judgment on the administrative record that Independent School District No. 11, Anoka-Hennepin, Minnesota (the District) provided Josh with a FAPE from June 18, 2001, to November 7, 2001. We affirm.

## I.

In 2001, Josh was a fourteen-year-old disabled student receiving special education and related services at Anoka High School. Josh suffers from severe oral apraxia/dyspraxia, a mild to moderate mental impairment, microcephaly, sensory deficits, and an unspecified behavior disorder. Josh's apraxia impairs his speech, and he uses a device known as the Dynamyte to help him communicate. Josh is entitled to receive special education services pursuant to the IDEA. During the 2001-02 school year, Josh attended ninth grade and resided within the geographic bounds of the District.

After the Renolletts requested a due process hearing to contest Josh's education, the District and the Renolletts met in May 2001. On June 18, 2001, the parties entered into a settlement agreement and developed Josh's individualized education plan (IEP) to address Josh's needs for his upcoming transition from the District's middle school to its high school. The IEP called for a written behavior plan, and the parties intended to implement "significant change[s] by August 1, 2001 to reflect the development of a behavior intervention plan focusing on appropriate use of communication, including the use of the Dynamyte, and social skills." Appellee's App. at 15. Throughout the summer, the parties worked to implement the requirements of the IEP, but they were unable to meet the August 1 target date.

On August 6, 2001, the Renolletts requested that the District reopen the May 2001 due process hearing. An independent hearing officer (IHO) met with the parties

[2]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

several times, and the hearing commenced on October 26, 2001, and concluded on February 14, 2002. The hearing addressed Josh's education from June 18, 2001, through November 7, 2001. On May 17, 2002, the IHO issued its decision, finding that the District provided Josh with a FAPE in all areas except speech and occupational therapy. Accordingly, the IHO awarded Josh compensatory education for that period of time during the first quarter of the 2001-02 school year when he was not provided with 150 minutes per week of direct speech services and 30 minutes per week of direct occupational therapy services.

Josh appealed the IHO's decision to a hearing review officer (HRO). The HRO adopted the IHO's findings of fact, affirmed the IHO's decision that the District failed to provide adequate speech and occupational therapy services, reversed three of the IHO's conclusions of law, and determined that Josh had been denied a FAPE. The HRO concluded that Josh's behavior plan needed to be in writing. The HRO agreed with the IHO's conclusion that the District had not used regulated behavioral interventions, known as conditional procedures, but concluded that the District failed to call certain meetings that were required under Minnesota law after such interventions. Further, the HRO found that the evidence did not support the IHO's finding that Josh had made progress towards the goals outlined in his IEP. Ultimately, the HRO concluded that the District violated both the procedural and substantive requirements of the IDEA and awarded Josh an additional 700 minutes of compensatory education.

The District appealed the HRO's decision, arguing that it met the procedural and substantive requirements of the IDEA. The district court overturned the HRO's decision and reinstated the IHO's determination that Josh received a FAPE except with regard to speech and occupational therapy. Josh appeals, arguing that District failed to follow the procedural and substantive requirements of the IDEA and failed to provide Josh with a FAPE. Josh seeks reversal of the district court's order and additional compensatory education.

## II.

Under the IDEA, a party may appeal from the state administrative proceedings to a federal district court. 20 U.S.C. § 1415(i)(2)(A). The district court must review the state administrative record, hear additional evidence if requested, and grant such relief it deems appropriate, basing its decision on the preponderance of the evidence.[3] 20 U.S.C. § 1415(i)(2)(B). The district court must independently determine whether the child has received a FAPE, giving "due weight" to the administrative proceedings. CJN v. Minneapolis Pub. Sch., 323 F.3d 630, 636 (8th Cir. 2003). "The district court must give 'due weight' because the administrative panel had an opportunity to observe the demeanor of the witnesses and because the court should not substitute its own educational policy for those of the school authorities that they review." Id. (quoting Strawn v. Missouri State Bd. of Educ., 210 F.3d 954, 958 (8th Cir. 2000)). When, as here, the state has a two-tier administrative review system and the findings and conclusions conflict, the district court may choose to credit the first tier's findings based on observation of the witnesses. Id.; Fort Zumwalt Sch. Dist. v. Clynes, 119 F.3d 607, 610 (8th Cir. 1997).

Whether a school district has provided a student with a FAPE is a mixed question of fact and law, and we review *de novo* the district court's ultimate determination. Neosho R-V Sch. Dist. v. Clark, 315 F.3d 1022, 1027 (8th Cir. 2003).

---

[3]In Schaffer ex rel. Shaffer v. Weast, the Supreme Court held that the burden of persuasion in an administrative hearing challenging an IEP is properly placed upon the party seeking relief, whether that is the disabled child or the school district. 126 S. Ct. 528, 537 (2005). At the time of the administrative proceedings in this case, however, the law in our Circuit placed the burden on the school district. E.g. Blackmon ex rel. Blackmon v. Springfield R-XII Sch. Dist., 198 F.3d 648, 658 (8th Cir. 1999); E.S. v. Indep. Sch. Dist., No. 196, 135 F.3d 566, 569 (8th Cir. 1998). Here, Josh sought relief, and the burden of persuasion was placed on the District. In light of Schaffer, it was error to place the burden on the District, but the error was harmless because the District prevailed.

"[T]he district court's findings of fact are binding unless clearly erroneous." Id. (quoting Gill v. Columbia 93 Sch. Dist., 217 F.3d 1027, 1035 (8th Cir. 2000)).

## III.

In a suit by an aggrieved party under the IDEA, the court inquires whether the school district met the IDEA's procedural and substantive requirements. Procedurally, the school district must follow the procedures set forth in the IDEA to formulate an IEP tailored to meet the disabled child's unique needs. Clark, 315 F.3d at 1026-27; CJN, 323 F.3d at 634. To pass substantive muster, the IEP must be "reasonably calculated to enable the child to receive educational benefits." Bd. of Educ. v. Rowley, 458 U.S. 176, 206-07 (1982). If the school district has met these requirements, it "has complied with the obligations imposed by Congress and the courts can require no more." Rowley, 458 U.S. at 207.

## A.

Josh contends that the District violated the procedural requirements of the IDEA in creating his IEP because the IEP did not incorporate a written behavior intervention plan (BIP). "An IEP should be set aside only if procedural inadequacies compromised the pupil's right to an appropriate education, seriously hampered the parents' opportunity to participate in the formulation process, or caused a deprivation of educational benefits." Indep. Sch. Dist. No. 283 v. S.D., 88 F.3d 556, 562 (8th Cir. 1996)(internal quotations omitted). After reviewing the record, we conclude that, although Josh's IEP was not perfectly executed, the District did not compromise Josh's right to an appropriate education or deprive him of educational benefits.

We agree with the IHO and the district court that any procedural irregularities related to Josh's BIP did not deny Josh a FAPE. Although the parties intended to attach a written BIP to Josh's IEP, neither Minnesota nor federal law require a written BIP. Further, the IHO and the district court found that the District staff responded to Josh's behavioral incidents with set procedures. Josh's behavioral incidents and the

District's responses to each are well documented, and the record is replete with testimony from Josh's educators of Josh's progress during the relevant time. Although the HRO rejected the testimony as "strong on opinion, weak on substance," Appellant's App. at 141, the district court was entitled to credit the IHO's findings of fact that supported the legal conclusion that Josh received a FAPE. See CJN, 323 F.3d at 636 (recognizing that, in a two-tier administrative review system, a court may choose to credit the first-tier's findings based on observations of witnesses); Clynes, 119 F.3d at 610 (same). We conclude that the district court did not clearly err in its findings of fact, and we agree with its conclusion that the District provided Josh with a FAPE.

**B.**

Josh next argues that the behavior intervention did not meet Minnesota's special education regulations. Under the IDEA, a student's IEP must "meet the standards of the State educational agency." 20 U.S.C. § 1401(8)(B). Thus, "when a state provides for educational benefits exceeding the minimum federal standards set forth under Rowley, the state standards" are enforceable under the IDEA. Blackmon ex rel. Blackmon v. Springfield R-XII Sch. Dist., 198 F.3d 648, 658 (8th Cir. 1999). Here, Josh argues that the District violated Minnesota Rule 3525.2900 because the staff did not focus on skills acquisition and the District used "conditional procedures" without calling a meeting of Josh's IEP team.

Josh contends that the District did not provide him with behavior interventions that focused on skills acquisition. Under Minnesota law, "[t]he objective of any behavioral intervention must be that pupils acquire appropriate behavior and skills." Minn. R. 3525.0850. None of the decisions below explicitly addressed this Minnesota requirement. From the IHO's findings of fact, it is evident that the staff used different interventions depending on Josh's behavior to redirect him and help him de-escalate. Appellant's App. at 44-52. We are satisfied that the record reflects that the District used appropriate behavior interventions.

Josh also argues that the District used "conditional procedures" without following the notice and meeting requirements of Minnesota Rule 3525.2900. Conditional procedures are defined as "interventions that meet the definitions of aversive and deprivation procedures which are not prohibited." These procedures include the following: "(A) the use of manual restraint; (B) the use of mechanical or locked restraints; (C) time out procedures for seclusion; and (D) temporary delay or withdrawal of regularly scheduled meals or water not to exceed 30 minutes." Minn. R. 3535.0210. Minnesota Rule 3525.2900 provides that districts may use conditional procedures in emergencies, but requires that "[t]he IEP team [] meet as soon as possible, but no later than five school days after emergency procedures have commenced."

During the first quarter of the 2001 school year, Josh had several behavioral incidents. When necessary, his paraprofessionals escorted Josh to a special room that had been created for him to help him calm down. Both the IHO and the HRO found that escorting Josh to his special room and having Josh spend time in that room were not conditional procedures. Because the behavior interventions employed by the District did not amount to conditional procedures, we conclude that no emergency IEP team meeting was required and that the District did not violate the IDEA or Minnesota law when it employed these interventions.

## C.

Josh's final argument is that the District failed to meet the substantive requirements of the IDEA. We disagree. The IDEA requires only that the IEP be "reasonably calculated to enable the child to receive educational benefits." Rowley, 458 U.S. at 206-07. Although the time period under review was short, Josh's teachers and paraprofessionals testified as to the progress Josh made during the first quarter of the 2001 school year. Accordingly, we are satisfied that he was provided with meaningful educational benefit.

The judgment is affirmed.

_____